IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-811 |
| | ) | |
| JOHN ZARRA and MARSHA ZARRA, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

CONTI, District Judge.

This is a suit for unpaid federal income taxes.  On June 14, 2010, plaintiff the United

States of America ("government" or "plaintiff"), filed a complaint against defendants John and

Marsha Zarra (the "Zarras" or "defendants") pursuant to 26 U.S.C. § 7403(a) (the government

may file a civil action where there has been a refusal or neglect to pay any tax).  On August 11,

2010, the government filed an amended complaint (ECF No. 7), which is the subject of the

instant memorandum opinion.  On August 25, 2010, the Zarras filed a motion to dismiss the

amended complaint (ECF No. 9).  On September 15, 2010, the government filed a motion for

summary judgment (ECF No. 15).  On November 9, 2010, the court denied the motion to dismiss

with prejudice and denied the motion for summary judgment without prejudice.  On February 24,

2011, the Zarras filed a third party complaint against J.P. Morgan Chase & Co. and Citizens

Financial Group, Inc. (ECF No. 34), which was dismissed.  (ECF No. 73.)

Waiting the court's determination are cross-motions for summary judgment.  The

government's renewed motion for summary judgment (ECF No. 35), filed on February 25, 2011,

requests the court grant summary judgment in its favor and award damages because the Zarras

cannot properly assert any affirmative defenses, and no rational trier of fact could find that the

Zarras satisfied their tax obligation.  The Zarras' motion (ECF No. 63), filed on June 30, 2011, requests the court grant summary judgment in their favor with respect to the government's claim, relying on three alternative theories.  First, the government did not demonstrate that a timely assessment was made against the Zarras for the 1999 tax year.[1]  Second, the Zarras satisfied their obligation to the government because their check, which was written for the correct amount, was accepted by the banks involved in the transaction.  Third, the doctrines of laches, waiver, and equitable estoppel preclude the government's claim at this juncture.

After considering these motions and the parties' briefs in opposition and other submissions, the government's motion will be granted and the Zarras' motion will be denied because the Zarras failed to pay fully their tax obligation, and no affirmative defenses shield them from liability under these circumstances.

### I. Factual background

In April 2000, the Zarras timely submitted a check to the Internal Revenue Service ("IRS") to pay their 1999 tax liability of $179,501.  (Defs.' Concise Statement of Material Facts ("D.C.S.") (ECF No. 64) ¶ 3; D.C.S. Ex. 4.)  The check was written for the correct amount, presented, and accepted; however, the check was negotiated for $179.50. (D.C.S. ¶ 3.)  The IRS subsequently received only $179.50 from the Zarras' account.  (D.C.S. Ex. 5 at 2.)

The Zarras discovered this mistake when they received their monthly bank statement in May 2000.  (*Id.*)  Although Mrs. Zarra contacted the IRS twice seeking to rectify the error, the IRS sent notice to the Zarras in September 2000 demanding payment of the outstanding balance along with interest and penalties.  (*Id.*)  The Zarras contacted the IRS a third time, but they were unsuccessful in their attempt to fix the error.  (*Id.* at 2-3.)

---

[1] Surprisingly, the Zarras continue to pursue this theory as a bar to the government's claim.  During the hearing on the Zarras' motion to dismiss, the court denied the motion with prejudice because the court found that the assessment was timely made.  As explained *infra*, the Zarras' argument on this point remains unavailing.

On July 3, 2000, a delegate of the Secretary of the Treasury made various assessments against the Zarras for income tax, penalties, and interest, relating to the 1999 tax year. (Pl. Concise Statement of Material Facts ("P.C.S.") (ECF No. 37) ¶ 1.)  The government presented a Form 4340 and RACS 006 form as evidence of the assessment against the Zarras, and both documents list the assessment date as July 3, 2000.  (P.C.S. Ex. B; D.C.S. Ex. 3.)  Sandra Mikkelsen, a government representative, testified during her deposition that the Zarras' assessment is included in one of the three entries with cycle number 200025 on the RACS 006. (Pl.' Resp. to Defs.' Concise Statement of Material Facts ("P.R.D.C.S.") (ECF No.) ¶ 1.)

Although the Zarras had sufficient funds in their account when they submitted the check, their income and financial situation has since deteriorated.  (P.R.D.C.S. Ex. E.)  The government asserts that, as of March 7, 2011, $364,424 remains due including interest and penalties.  (P.C.S. ¶ 3.)

## II. Standard of review

Federal Rule of Civil Procedure 56 provides in relevant part:

> **(a) Motion for Summary Judgment or Partial Summary Judgment.**  A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.   The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.
> . . .
> **(c) Procedures.**
>
> **(1) *Supporting Factual Positions*.**  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

> purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(a), (c)(1)(A), (B).

> Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof.") (citing *Anderson*, 477 U.S. at 248; *Celotex Corp.*, 477 U.S. at 322-23).

> "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts

in favor of the nonmoving party.  *Woodside v. Sch. Dist. of Phila. Bd. of Educ.*, 248 F.3d 129,

130 (3d Cir. 2001); *Doe v. Cnty. of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001); *Heller v.*

*Shaw Indus., Inc.*, 167 F.3d 146, 151 (3d Cir. 1999).  A court must not engage in credibility

determinations at the summary judgment stage.  *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*,

142 F.3d 639, 643 n.3 (3d Cir. 1998).

### III. Discussion

### A. Whether a timely IRS assessment occurred

The Zarras assert the government did not demonstrate that a timely assessment was made

against them for the 1999 tax year.  Pursuant to 26 U.S.C. § 6501(a), "the amount of any tax

imposed by this title shall be assessed within 3 years after the return was filed."  26 U.S.C. §

6501(a).  Because a tax claim must be brought within ten years after assessment, *see* 26 U.S.C. §

6502(a)(1), the government's complaint would be time barred if the Zarras' assessment occurred

before June 14, 2000.  The Zarras argue that the government is unable to establish the requisite

connection between the RACS 006 and the Form 4340.  The Form 4340, however, clearly states

that the assessment date was July 3, 2000.  "Courts have indicated that a Form 4340 is adequate

to prove a valid assessment if it lists the '23C date,' indicating the date on which the actual

assessment was made."  *Huff v. United States*, 10 F.3d 1440, 1446 (9th Cir. 1993) (citations

omitted).  Moreover, the Form 4340 is admissible evidence.  *See, e.g.*, *Hughes v. United States*,

953 F.2d 531, 539-40 (9th Cir. 1992) (holding that a Form 4340 is admissible under both Federal

Rule of Evidence 803(8) and Federal Rule of Evidence 902(1)).  A Form 4340 is "valid evidence

of a taxpayer's assessed liabilities and the IRS's notice thereof."  *Perez v. United States*, 312 F.3d

191, 195 (5th Cir. 2002).  By submitting the Zarras' Form 4340, which confirms the assessment

date, the government sufficiently demonstrated that a valid tax assessment occurred on July 3, 2000.

The Zarras contend that the court's March 1, 2011 minute entry ordered the government to prove a connection between the Zarras' unique Form 4340 and the RACS 006.[2]  A court, however, speaks through its judgment and not through its minute entries.  *See United States v. Penney*, 576 F.3d 297, 304-05 (6th Cir. 2009).  The court did not impose a greater burden on the government; the "order" merely enabled the Zarras to obtain discovery of information they sought to attain to challenge the Form 4340.  The government provided a deponent who explained the connection between the Zarras' Form 4340 and the RACS 006.  The deponent testified that the Zarras' assessment is included in one of three entries with cycle number 200025 on the RACS 006.  It would be nonsensical to expect a summary report of over 100,000 assessments to individually identify taxpayers.  "It is well established in the tax law that an assessment is entitled to a legal presumption of correctness."  *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002).  The government met its burden to establish the presumption that the assessment occurred on July 3, 2000;[3] the Zarras did not adduce any evidence to refute this assessment date.

### B. Whether the Zarras' payment satisfied their obligation

The Zarras contend that they have no outstanding tax liability because they submitted a valid check in the correct amount with sufficient funds available before the relevant deadline, and the check was presented and accepted, thus constituting payment.  The court disagrees.  A

---

[2] The minute entry provided in relevant part:  "The government will turn over the signed RACS 006 form as it relates to the assessment on July 3, 2000, and make available an individual for a deposition who can provide a connection between the particular 4340 in this case and the RACS 006, and the deposition will be limited to the relevant information on those two forms."  (Minute Entry 3/1/2011.)

[3] The government provided additional evidence of the assessment including an IRS employee declaration (Decl. of William Charlton ("Charlton Decl.") ¶ 5) and IRS transcripts of the Zarras' account. (P.R.D.C.S. Exs. A, B, and E.)

taxpayer has a "positive obligation to the United States: a duty to pay its tax." *Manning v. Seeley Tube & Box Co. of New Jersey*, 338 U.S. 561, 565 (1950).  Unlike typical commercial transactions involving check payments, where finality and liquidity are important concerns, "Congress has given the IRS an extraordinarily broad mandate to enforce the internal revenue laws." *Wheeler v. United States*, 459 F. Supp. 2d 399, 403 (W.D. Pa. 2006).  "[T]axes are the lifeblood of government, and their prompt and certain availability an imperious need." *Bull v. United States*, 295 U.S. 247, 259 (1935).

There is no genuine dispute over the fact that the face amount of the check was $179,501,[4] and there is no question that a payment was posted to the Treasury.  A deficiency remains, however, because only $179.50 was actually paid.  Accordingly, the Zarras have not satisfied their duty to the government because they did not provide full payment of their tax obligation.[5]

Proffering several theories, the Zarras contend that the final posting of the check shifted their obligation to pay over to the banks as intermediaries.  First, the Zarras point to some courts having held that an underencoded check has been "finally paid."  *See infra*.  Moreover, they argue the language of 13 PA. CONS. STAT. § 3310, particularly in light of these holdings, could be interpreted as discharging the Zarras' liability for the full face amount of the check.  Second, the Zarras assert that pursuant to 13 PA. CONS. STAT. § 4209, banks warranty that the encoded amount of a check is correct and are liable for any errors.  Third, the Zarras argue that the IRS could have and should have recovered the rest of the funds directly from the bank.

---

[4] The Zarras do not dispute the amount that they originally owed for the 1999 tax year.
[5] The government maintains that collateral estoppel bars the Zarras' claim that they fulfilled their obligation. Although the Court of Appeals for the Third Circuit noted that "the Zarras' underlying tax liability has not been discharged," *Zarra v. United States*, 254 F. App'x 931, 934 (3d Cir. 2007), this conclusion was unnecessary to the holding that the district court lacked subject-matter jurisdiction.  The court of appeals held that the Zarras failed to satisfy the *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1 (1962), exception to 26 U.S.C. § 7421, because the IRS could prevail "'under the most liberal view of the law and the facts.'" *Id.* (quoting *Williams Packing*, 370 U.S. at 7).  Thus, whether the Zarras' fully paid their liabilities to the government is a question properly before this court.

7

The Zarras' theories lack merit, however, because they (1) rely on inapplicable state law, (2) are not supported by case law, and (3) directly contravene the clear language of 26 U.S.C. § 6311.   It is doubtful that the Zarras' theories would prevail under circumstances involving a typical commercial transaction.   Regardless, § 6311 and relevant case law eliminate any doubt that the Zarras remain liable to the government for the outstanding balance.   Even if a bank assumed liability for the entire face amount of the check, the Zarras cannot satisfy their continuing tax obligation until the government receives full payment.

First, the Uniform Commercial Code ("UCC") does not apply to the extent that it conflicts with the Internal Revenue Code.[6]   "We . . . state flatly that the Uniform Commercial Code does not govern the power of [the plaintiff] to administer the Federal income taxation system with respect to [the defendants]."   *Hunt v. C.I.R.*, No. 10272, 1990 WL 90951, at *3 (T.C.M. July 3, 1990).   Even if the court accepts the Zarras' proposal that the check was fully paid according to 13 PA. CONS. STAT. § 3310 or if, instead, that the payment by check is still suspended because neither dishonor nor full payment has occurred, 26 U.S.C. § 6311 controls the present circumstances and supersedes any contrary state rules or regulations.[7]   The Zarras have not cited any case law for the proposition that the UCC governs the payment of their federal tax obligation.

---

[6] Under Pennsylvania's statutory adoption of the UCC, "[i]f a note or an uncertified check is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken."   13 PA. CONS. STAT. § 3310(a).   "In the case of an uncertified check, suspension of the obligation continues until dishonor of the check or until it is paid or certified."   13 PA. CONS. STAT. § 3310(b)(1).   "In plain words, payment is conditionally made when the creditor . . . accepts payment by a check from the debtor. . . . If the check is honored, the condition is removed and payment relates back to the date of acceptance (i.e., receipt)."   *Romaine v. W.C.A.B.*, 901 A.2d 477, 485 (Pa. 2006).

[7] "Conflict preemption nullifies state law inasmuch as it conflicts with federal law, either where compliance with both laws is impossible or where state law erects an 'obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"   *Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010) (quoting *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985)).

Second, there is a paucity of case law addressing whether an obligation is discharged once a misencoded check is accepted by a bank, and the one case on point refutes the Zarras' argument.  In *France v. Ford Motor Credit Co.*, 913 S.W.2d 770 (Ark. 1996), a purchaser of a used tractor made two unsuccessful attempts to prepay the full obligation because both checks were underencoded, leaving an unpaid balance of $7,992.  The court interpreted the similar Arkansas version of UCC § 3-310:  "[T]he language of the statute leaves us with little doubt as to the proper resolution of this case.  It does no more than recognize the uncertainty attendant upon an uncertified and unpaid check and suspends the obligation until that uncertainty is resolved." *Id.* at 772.  The court held that the remaining obligation was not discharged because "[t]he suspense is over, and all are aware of the amount . . . which has yet to be satisfied."  *Id.*[8]

Finally, 26 U.S.C. § 6311 clearly requires full payment before a taxpayer is relieved of his liability.  "If a check . . . is not duly paid, or is paid and subsequently charged back to the Secretary, the person . . . shall remain liable for the payment of the tax . . . and for all legal penalties and additions, to the same extent as if such check . . . had not been tendered."  26 U.S.C. § 6311(b).  "[S]ection 6311 yields a plain, unambiguous meaning . . . it supplies two means of protecting the interests of the United States in the event the [check] is not duly paid: the taxpayer remains liable for the taxes; and the United States may also have a lien on the assets of the bank."  *United States v. Second Nat'l Bank of North Miami*, 502 F.2d 535, 540 (5th Cir. 1974).[9]  The word "duly" is defined as "[i]n a proper manner; in accordance with legal

---

[8] The Zarras disagree with this analysis, however, because the suspense was not over when the bank accepted the check.  At any moment, the bank could have been alerted to or discovered the mistake and debited the remaining funds from the Zarras' account.

[9] The panel in *Second National Bank* recognized that paying taxes with checks is an added convenience that in no way diminishes the government's right to collect taxes due and owing.  *Second National Bank*, 502 F.2d at 543 ("[A]t the same time that taxpayers were offered increased convenience, the government was to receive increased protection of its interest in receiving the taxes owing not only by retaining the right to pursue the taxpayer, but also by gaining the right to hold the respective bank or trust company for negotiable instruments not duly paid.").

requirements." *Black's Law Dictionary* 540 (8th ed. 2004).  Because the IRS received only $179.50, the Zarras remain liable for the outstanding balance that was not duly, or properly, paid.

In the context of a taxpayer's certified check, where the bank becomes liable to the government, the taxpayer continues to be liable until the government receives full payment.  *See* 26 U.S.C. § 6311(c) (the government has a lien against the bank "in addition to its right to exact payment from the party originally indebted therefor").  Section 6311(c) is directly contrary to the relevant UCC provision.[10]  If a certified check, which requires the bank to pay the check in full, does not discharge the taxpayer's obligation, then an underencoded, uncertified check certainly does not release the Zarras from their tax liability.

The above reasoning must be applied to each of the Zarras' arguments in turn.  First, in the context of assigning loss and liability *among banks* that participate in a misencoded transaction, some courts have held that an underencoded check has been "finally paid."  *See*, *e.g.*, *First Nat'l Bank of Boston v. Fidelity Bank*, 724 F. Supp. 1168, 1172 (E.D. Pa. 1989) ("I reject the argument that the 'amount of the item' for § 4-213(1) purposes is the encoded amount, rather than the face amount, of the check.").[11]  Important policies support these holdings.  "[T]he Board [of Governors of the Federal Reserve System] believes that finality of payment and the discharge of the underlying obligation are fundamental and valuable features of the check collection process."  Collections of Checks and Other Items by Federal Reserve Banks, 70 Fed. Reg. 71218, 71221 (Nov. 28, 2005) (to be codified at 12 C.F.R. pts. 210 and 229).  In the present

---

[10] "[I]f a certified check . . . is taken for an obligation, the obligation is discharged to the same extent discharge would result if an amount of money equal to the amount of the instrument were taken in payment of the obligation." 13 PA. CONS. STAT. § 3310(a).

[11] *See also Georgia R.R. Bank & Trust Co. v. First Nat'l Bank & Trust Co. of Augusta*, 229 S.E.2d 482, 484 (Ga. Ct. App. 1976) (finding that "posting of the item, although in a smaller amount than the true amount of the item, was sufficient to constitute final payment . . . the payor bank became accountable for the amount of the item."); *Azalea City Motels, Inc. v. First Alabama Bank of Mobile*, 551 So. 2d 967, 976 (Ala. 1989) (holding that "partial payment . . . constituted final payment . . . so that the drawee bank was rendered accountable for the full and proper amount of the item").

circumstances, however, the court addresses the liability between the parties and not how the banks should respond to the encoding error by reallocating accountability amongst themselves.

The Zarras urge the court to extend the above reasoning to obligations outside the banking system. In the case of an uncertified check, "[p]ayment or certification of the check results in discharge of the obligation to the extent of the *amount of the check*." 13 PA. CONS. STAT. § 3310(b)(1) (emphasis added). The Zarras construe the "amount" to be the face amount of the check. In fact, the UCC uses different language in reference to payment by note. "Payment of the note results in discharge of the obligation to the *extent of the payment*." 13 PA. CONS. STAT. § 3310(b)(2) (emphasis added). Although important policy considerations may support treating posted checks as final *within* the banking system and although the government was entitled to enforce the instrument to collect the remaining balance, 26 U.S.C. § 6311 embodies a countervailing public interest favoring full and timely payment of taxes and rejects the notion that the Zarras' obligation was completely satisfied.

Second, banks warranty accurate check encoding. "A person who encodes information . . . warrants to any subsequent collecting bank and to the payor bank or other payor that the information is correctly encoded. If the customer of a depositary bank encodes, that bank also makes the warranty." 13 PA. CONS. STAT. § 4209(a). "A person to whom warranties are made . . . may recover from the warrantor . . . an amount equal to the loss suffered as a result of the breach, plus expenses and loss of interest incurred as a result of the breach." 13 PA. CONS. STAT. § 4209(c). The court noted in *France*, however, that "[section 4209] provides warranties to collecting banks and payors but not to a payee." *France*, 913 S.W.2d at 772. Such a warranty, if applicable, would not release the Zarras from their tax obligation because the government did not receive full payment.

11

Finally, the Zarras contend the government could have collected the missing funds from the bank.  "If a drawer wrote a check for $25,000 and the depositary bank encoded $2,500, the payor bank becomes liable for the full amount of the check."  13 PA. CONS. STAT. § 4209 cmt. 2. "Since the payor bank can debit the drawer's account for $25,000, the payor bank has a loss only to the extent that the drawer's account is less than the full amount of the check."  *Id.*  As explained before, however, the government's ability to collect funds from an additional party does not discharge the taxpayer's obligation.  Moreover, the government would likely be precluded from taking action against the bank at this point because the statute of limitations has elapsed.  *See* 13 PA. CONS. STAT. § 3118(f) ("An action to enforce the obligation of a party to pay an accepted draft, other than a certified check, must be commenced . . . within six years after the date of the acceptance if the obligation of the acceptor is payable on demand.").

The Zarras argue they are unable to revoke the final settlement of the check, *see* 13 PA. CONS. STAT. § 4303, and they should not be forced to submit double payment.  When the Zarras viewed their monthly statement in May 2000 and discovered the encoding error, they easily could have written another check or taken other action to cause the funds in their bank account to be used for payment of their obligation.  Instead, the Zarras continued to write checks for other purposes and depleted the balance in their account.

The Zarras maintain that sending a second check would have potentially subjected them to double payment because the bank might yet debit their account to honor the original check. Interestingly, this theory does not squarely address the Zarras' continuing duty to satisfy their obligation to the government.  The Zarras could have asked the government not to collect the remaining funds on the original check or requested reimbursement for losses if their account became overdrawn.  Although the Zarras initially sought to satisfy their 1999 tax obligation, their

payment by check was only conditional.  Difficulties in making payment after May 2000 did not

extinguish the Zarras' 1999 tax obligation to the government.

In sum, the Zarras did not adequately support their novel contention that an underencoded

check discharges a tax obligation to the federal government to the full extent of the face amount

of the check.  A check does not release a tax liability until the government receives full payment.

Although the Zarras were not responsible for the encoding error and although they contacted the

IRS regarding the mistake, the Zarras clearly did not satisfy their tax obligation to the

government for the 1999 tax year.

### C. Laches, waiver, and equitable estoppel

The Zarras assert the affirmative defenses of laches, waiver, and equitable estoppel to

preclude the government from collecting the outstanding balance.  The statute of limitations on

IRS claims, however, has not run.  *See* 26 U.S.C. § 6502(a)(1).  The authority of the IRS to

collect taxes owed within ten years after assessment overwhelms these common law doctrines,

which are extraordinary remedies that are not warranted under the present circumstances.

First, "[i]t is well established that the United States is not subject to the defense of laches

in enforcing its rights."  *United States v. St. John's Gen. Hosp.*, 875 F.2d 1064, 1071 (3d Cir.

1989) (citing *United States v. Summerlin*, 310 U.S. 414, 416 (1940)).  Thus, the Zarras cannot

properly assert the affirmative defense of laches.  Second, a waiver is "an intentional

relinquishment or abandonment of a known right or privilege."  *Johnson v. Zerbst*, 304 U.S. 458,

464, (1938).  Equitable relief, such as waiver, is left to the discretion of the court.  *See*, *e.g.*,

*James v. Richman*, 547 F.3d 214, 217 (3d Cir. 2008).  The Zarras did not demonstrate that the

government voluntarily and intentionally abandoned or relinquished its known right to collect the

remaining balance of taxes owed.  On the contrary, less than one year after the encoding error,

13

the government asserted its rights and demanded full payment.  Thus, the Zarras cannot properly assert the affirmative defense of waiver.

Finally, "[i]n order to prevail on a traditional estoppel defense, a defendant must prove a misrepresentation upon which the defendant reasonably relied to his detriment." *St. John's*, 875 F.2d at 1069 (citations omitted).  Moreover, "affirmative misconduct" must be shown before estoppel against the government can even be contemplated.  *United States v. Pepperman*, 976 F.2d 123, 131 (3d Cir. 1992).  Estoppel is only appropriate in "rare and extreme circumstances" where the "'interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government'" is imperiled.  *Id.* (quoting *Heckler v. Community Health Servs.*, 467 U.S. 51, 61 (1984)).  "Estoppel claims have traditionally been put to especial rigor in the taxation context." *Bachner v. C.I.R.*, 81 F.3d 1274, 1282 (3d Cir. 1996).  Although an error occurred when the Zarras' check was processed, the government did not misrepresent material facts, and the Zarras could not have justifiably relied on the inaccurate encoding.  Moreover, less than one year after the encoding error, the government asserted its rights and demanded full payment.  Under these circumstances, the government never gave the Zarras any indication that they were relieved of their 1999 tax obligation.  Thus, the Zarras cannot properly assert the affirmative defense of equitable estoppel.

### D. Interest and penalties

Because the Zarras have an outstanding tax liability, the Zarras, unless there is an applicable statutory exception, would owe interest on the unpaid balance dating back to the date the taxes were due.  "If any amount of tax . . . is not paid on or before the last date prescribed for payment, interest . . . shall be paid for the period from such last date to the date paid." 26 U.S.C. § 6601(a).  "Unless a statutory exception applies, neither the IRS nor the courts have discretion

to excuse a taxpayer from payment of interest." *Anderson Columbia Co., Inc. v. United States*, 54 Fed. Cl. 756, 758 (Fed. Cl. 2002) (citing *Johnson v. United States*, 602 F.2d 734, 738 (6th Cir. 1979)). "In the absence of a clear legislative expression to the contrary, the question of who properly should possess the right of use of the money owed the Government for the period it is owed must be answered in favor of the Government." *Manning*, 338 U.S. at 566.

The Zarras failed to "pay the amount shown as tax" on their return. 26 U.S.C. § 6651(a)(2). They are, therefore, subject to mandatory penalties unless they demonstrate that this failure was due to "reasonable cause" and not due to "willful neglect." 26 U.S.C. § 6651(a). "[T]he Congressional purpose behind the penalty provision [is] to encourage the payment of taxes when due." *Industrial Indemnity v. Snyder*, 41 B.R. 882, 884 (Bankr. E.D. Wash. 1984) (citation omitted). "To escape the penalty, the taxpayer bears the heavy burden of proving both (1) that the failure did not result from 'willful neglect,' and (2) that the failure was 'due to reasonable cause.'" *United States v. Boyle*, 469 U.S. 241, 245 (1985) (quoting 26 U.S.C. § 6651(a)(1)). "[T]he term 'willful neglect' may be read as meaning a conscious, intentional failure or reckless indifference." *Id.* (citations omitted). Regarding "reasonable cause" for failure to pay, a taxpayer must demonstrate that he "exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship . . . if he paid on the due date." 26 C.F.R. § 301.6651(c)(1). "The principle underlying the IRS regulations and practices [is] that a taxpayer should not be penalized for circumstances beyond his control." *Boyle*, 469 U.S. at 249 n.6.

Under the present circumstances, the Zarras' failure to pay their taxes was not due to "reasonable cause." There is no evidence of financial hardship or an inability to pay *at the time* the taxes were due. *See, e.g., East Wind Indus., Inc. v. United States*, 196 F.3d 499, 500-01 (3d

Cir. 1999).  On the contrary, there were sufficient funds in the Zarras' account when they discovered that the check had been incorrectly processed and there is no evidence of illness or physical disability.  *See*, *e.g.*, *Erickson v. C.I.R.*, 172 B.R. 900 (Bankr. D. Minn. 1994) (a quadriplegic debtor exercised care and prudence, relying on another due to his inability to perform the filings and make the payments himself).  Although the Zarras argue that they failed to satisfy their obligation due to a mistake of law, *see*, *e.g.*, *L. L. Morris Transp. Co. v. United States*, No. 76-47, 1980 WL 1580, at *4 (W.D. Ky. Feb. 25, 1980) (a transportation company was not unreasonable in concluding that a refining company had assumed responsibility for remitting the federal excise tax due), "ordinary business care and prudence," 26 C.F.R. § 301.6651(c)(1), would require that they make full payment once they discovered the error.  Moreover, the IRS dispelled any notion that the Zarras were in compliance when it demanded full payment less than one year after the error occurred.  The government never made any contrary representation upon which the Zarras could have relied.  Stated concisely, ensuring full payment of their 1999 tax obligation was well within the Zarras' control.[12]

Additionally, after the Zarras became aware of the insufficient payment, their decision to spend their resources on other matters could be viewed as "reckless indifference" or even "intentional failure."  The Zarras made the conscious decision not to submit a second check or find an alternative method to pay their outstanding tax obligation.  Indeed, they eventually spent the funds in the account instead of paying their tax obligation.  Under these circumstances, it would have been unreasonable for the Zarras to believe that their tax obligation to the government was satisfied.  Thus, the Zarras failed to demonstrate that their failure was not due to "willful neglect."

---

[12] The Zarras' present financial condition is irrelevant in determining whether they would have suffered an undue hardship on the date the taxes were due.

In sum, the Zarras owe interest on their unpaid balance beginning on the date the taxes were due.  In addition, the Zarras have not met their heavy burden to escape the mandatory penalties for failing to pay their taxes.  If the Zarras had quickly corrected the mistake after they viewed their bank statement in May 2000, they would have had a compelling argument that an exception was warranted.  Under the present circumstances, however, it would be disingenuous for the Zarras to claim that satisfying their obligation to the government was outside their control.

### IV. Conclusion

The Zarras did not pay their taxes in full for the 1999 tax year.  They have not demonstrated any legitimate excuse, justification, or affirmative defense.  No reasonable jury could conclude that there is any genuine issue of material fact for this case to proceed to trial. The government's motion for summary judgment must be granted and the Zarras' motion for summary judgment will be denied.  An appropriate order shall follow.


Dated: August 26, 2011                                      By the court:

                                                            /s/ JOY FLOWERS CONTI
                                                            Joy Flowers Conti
                                                            United States District Judge